ANJAY CORPORATION et al., Appellants, v THOSE CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO CERTIFICATE NUMBER HN01AAF4393, Respondents. [822 NYS2d 249]—

Order, Supreme Court, New York County (Carol Edmead, J.), entered December 23, 2004, which granted defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, with costs, the motion denied and the complaint reinstated.

Plaintiffs, entities engaged in the business of manufacturing jewelry, own and operate a facility in Mexico where they manufacture jewelry from gold and diamonds. Defendants insurers issued to plaintiffs a jewelers' block policy of insurance that insured against loss or damage to plaintiffs' jewelry stock. The policy was not an all-risk policy, but rather provided that "coverage under this Insurance shall be restricted to loss and/or damage arising from the perils of Fire, lightning, Explosion, Aircraft, Storm, Tempest, Flood, Burst Pipes, Impact, Hold-Up (as defined herein), Robbery (as defined herein), or Safe Burglary (as defined herein). Any other loss or damage not specified above shall be excluded." The policy also contained certain warranties, one of which, denominated the "Video Tape Warranty," reads in full as follows: "It is a warranty of this insurance that the Assured shall maintain all video tapes for a minimum of seven days or, in the event of a loss occurring, shall keep such video tapes until they have been viewed by the Loss Adjuster appointed by Underwriters."

On March 7, 2002, an employee in the Mexico facility inadvertently poured acetone into a pot of boiling water in a room, the "washout room," where assembled items of jewelry are cleaned. An explosion and fire ensued, and plaintiffs claimed a resulting loss of gold and diamonds of just over $1.2 million. Following an investigation by a loss adjusting firm, defendants denied the claim. On this appeal, the principal issue relates to one of the grounds defendants asserted for denial of the claim, plaintiffs' breach of the Video Tape Warranty. On the basis of

this breach, Supreme Court granted defendants' motion for summary judgment.

Apparently, the facility's video surveillance system included cameras at various locations, monitors and a videocassette recorder. The breach defendants rely upon is plaintiffs' failure to preserve the videotapes until viewed by the loss adjuster. According to the affidavit of the facility's general manager, he located the tape depicting the washout room prior to the explosion and set it aside. However, that tape was reused in accordance with normal procedures at some point after defendants allegedly lulled plaintiffs into believing that defendants regarded as irrelevant any videotapes recorded on the day of the fire. The general manager also asserted that none of the cameras were working after the explosion due to a loss of electric power, the cameras were damaged by the fire and the surveillance system did not again become operational until March 25, 2002.

As Supreme Court recognized, a breach of a policy warranty by an insured does not necessarily relieve the insurer of its obligations under the policy. Rather, "a breach of warranty does not defeat recovery under an insurance contract 'unless such breach materially increases the risk of loss, damage or injury within the coverage of the contract' " (*Continental Ins. Co. v RLI Ins. Co.*, 161 AD2d 385, 387 [1990], quoting Insurance Law § 3106 [b]). The question of the materiality of a breach of warranty is "[o]rdinarily . . . a question of fact for the jury" and "[i]t is only where the evidence concerning the materiality is clear and substantially uncontradicted that the question is a matter of law for the court to decide" (*id.* [citation omitted]). The burden is on the insurer to show the materiality of the breach (*cf. Carpinone v Mutual of Omaha Ins. Co.*, 265 AD2d 752, 754 [1999]).

Defendants' various contentions on the ostensible materiality of plaintiffs' breach are unavailing. That a video surveillance system decreases the risk of loss generally—principally by reducing the incidence of various forms of larceny, including "Hold-Up" and "Robbery"—is irrelevant when the loss is caused by an event the occurrence of which cannot possibly be affected by such a system. Defendants do not dispute that the explosion and fire were caused by a worker's inadvertence. Also irrelevant are defendants' assertions that the Video Tape Warranty was particularly important to the underwriters in light of the prior loss history of the policyholders. Presumably, all insurers regard as important the warranties for which they negotiate. The importance of a warranty, however, does not establish anything about the materiality of a particular breach. Defendants' asser-

tion that footage of events occurring prior to the power outage would have provided "valuable information" about the extent of the fire and the activities of persons in the building prior to the outage is pure speculation. Nor do defendants offer any explanation of what that information might be or how plaintiffs' failure to preserve it materially increased the risk of loss.

To be sure, it is possible that some portion of the gold and jewelry losses could have been the result of acts of theft occurring in the aftermath of the explosion. To the extent defendants rely on that possibility, it is unavailing as well. Obviously, plaintiffs would not be in breach of the Video Tape Warranty if the occurrence of one of the risks for which it obtained insurance made it impossible for it to comply with the warranty. As noted, the facility manager asserted in opposition to defendants' motion that the cameras stopped working simultaneously with the power outage and did not again become operational for more than two weeks.

Nor could summary judgment properly be granted to defendants on the basis of either of the two alternative grounds raised in their motion which Supreme Court did not reach. We assume without deciding that the record-keeping provisions of the policy required plaintiffs to keep and maintain records sufficient to determine the amount of any loss without "any need to resort to evidence outside the records to explain the records other than might be necessary to disclose the bookkeeping methods employed" (*Globe Jewelry v Pennsylvania Ins. Co.*, 72 Misc 2d 563, 564 [1973] [citations omitted]). Although the factual averments submitted by defendants may have established that there were curiosities in the records reviewed and that the accounting firm retained by defendants had difficulties determining the extent of the loss, neither the sworn nor the unsworn averments established either that all of plaintiffs' records had been reviewed or that it was not possible to determine the amount of loss with sufficient precision from plaintiffs' records (*see Diamond Den v Jefferson Ins. Co. of W. N.Y.*, 127 AD2d 998 [1987]).

Finally, defendants argue that the extent of the claimed losses is explicable only on the basis of the occurrence, after the explosion and fire, of varieties of theft not covered by the insurance policy. This argument, however, rests on speculation. Given our disposition of this appeal, we need not reach plaintiffs' contention that defendants are estopped from relying on the breach of the Video Tape Warranty. Concur—Sullivan, J.P., Nardelli, Catterson, McGuire and Malone, JJ.